* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Ledford. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At the time of the alleged injury, an employment relationship existed between plaintiff and defendant.
3. PMA Insurance was the carrier on the risk for defendant.
4. The issues before Deputy Commissioner Ledford were:
 a. Whether plaintiff sustained an injury to her right shoulder/right cervical region within the course and scope of her employment with the defendant on or about July 15, 2003?
 b. Alternatively, should the Industrial Commission find that plaintiff sustained an injury by accident during the course and scope of her employment on July 15, 2003, did the plaintiff sustain a new unrelated injury on or about November 26, 2003?
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was fifty-five years of age. She completed the 11th grade. Although she never obtained a GED, plaintiff did obtain a certificate as a certified nursing assistant (CNA).
2. Plaintiff worked for Madison Manor Nursing Center for about 20 years, and last worked there July 24, 2003. Plaintiff had a good work record with defendant. Despite several injuries while working for defendant, plaintiff always returned to work and missed very little time outside of surgical recovery *Page 3 
3. Plaintiff has a significant history of cervical and lumbar pain. In July 1990, plaintiff sustained an injury to her lower back while assisting an overweight patient during the course and scope of her employment with Madison Manor Nursing Home. As a consequence of that injury, plaintiff subsequently underwent a lumbar diskectomy performed by Dr. Maxwell on September 11, 1990.
4. In 1983 plaintiff underwent a microdiskectomy performed by Dr. Ralph Loomis, neurosurgeon. In September 1996, plaintiff saw Dr. Loomis with complaints of left arm pain with numbness in the fingers of her left hand. A cervical myelogram revealed soft tissue disk density within the left C6-C7, as well as disc protrusion on the left C5-C6. On October 3, 1996, Dr. Loomis performed a cervical diskectomy and neck foraminotomy (removal of bone) at left C5-6 and C6-7.
5. On October 31, 1996, Dr. Loomis released plaintiff to return to full work duties, with a fifteen-pound lifting restriction. Plaintiff returned to full time work with defendant as a medical supply clerk. During the nine years after her return to work for defendant, plaintiff consulted Dr. Loomis on two occasions for neck and arm pain, primarily on the left, once on August 13, 1998 and again on October 30, 2002.
6. At plaintiff's October 30, 2002 visit with Dr. Loomis, plaintiff complained of left arm pain, numbness into the palm of her left hand, and posterior neck pain. Subsequently, an MRI of plaintiff's cervical spine was performed, revealing cervical spondylosis at C5-C6 and postoperative changes at C6-C7.
7. After reviewing this MRI, Dr. Loomis recommended that plaintiff undergo an anterior cervical diskectomy and fusion (ACDF) with bank bone and plate instrumentation at C5-C6 and C6-C7. Plaintiff decided not to have the recommended surgery at that time, because the *Page 4 
prior surgery had been so painful. Plaintiff did not want to go through surgery again, unless her pain was so great she could not tolerate it.
8. On Tuesday July 15, 2003, plaintiff was asked to clean off some shelves in the stock room. This was an extra assignment, outside plaintiff's normal tasks. There was a lot of trash to haul out, which plaintiff and Roger Edmonds began taking out to the dumpster. While Roger Edmonds was taking out a load of trash, plaintiff began working on shelves on the other side of the stock room. Plaintiff found two old and "decrepit" geri-chair tabletops wedged in the shelf area at the sprinkler system. As plaintiff was attempting to dislodge the first tabletop to pull it out, she felt a pop and burning in her right shoulder. When Roger Edmonds came back from emptying trash, plaintiff told him she had hurt her shoulder, trying to move the tabletops. Plaintiff finished working that day.
9. Plaintiff did not immediately tell her supervisor, Laura Hobein, about the incident since she thought she had just pulled a muscle. The pain in plaintiff's right shoulder did not go away and started moving down into her right arm.
10. On Friday, July 18, 2003, plaintiff met with the new administrator of the nursing home, Deborah Giezentanner, who was reorganizing job duties due to the company's financial situation. Ms. Giezentanner changed plaintiff's job duties to a facility aid. The new job description included the requirement to assist in making beds. When plaintiff told Ms. Giezentanner that she would likely be unable to fulfill that duty, Ms. Giezentanner told her that if she could not fulfill the duties, she could take an immediate layoff. During this meeting, plaintiff did not mention her injury to Ms. Giezentanner from three days prior.
11. Plaintiff's neck and arm pain increased over her weekend at home. On Monday, July 21, 2003, plaintiff completed an incident report, which she gave to her supervisor, Ms. *Page 5 
Hobein. Ms. Hobein agreed to submit the incident report to Deborah Giezentanner, the new administrator, but expressed her doubt that the accident would be accepted since it was not submitted the day of the injury.
12. On July 22, 2003, plaintiff sought treatment at the Mars Hill Medical Center. Plaintiff has used this clinic for her family medical needs since 1988. Since she did not think that workers' compensation would cover her injury, plaintiff paid for this treatment through her group health insurance plan.
13. Plaintiff reported a one-week history of pain in the right side of her neck and shoulder, which she attributed to cleaning shelves at work. Dr. Virginia Barnhardt, a board-certified family physician at Mars Hill Medical Center testified to plaintiff's treatment history at that clinic, which included prior treatment of back and neck pain. Dr. Barnhardt first saw plaintiff as a patient in January 1993, and has found her to be a "straightforward patient." In Dr. Barnhardt's opinion, plaintiff's new complaints in July 2003 were caused by aggravation of her prior condition by the injury plaintiff reported at work. Further, in Dr. Barnhardt's opinion, plaintiff was unable to work due to the severity of her pain.
14. Plaintiff returned to Dr. Loomis on July 23, 2003. Plaintiff told Dr. Loomis that she was doing an extra job at work and hurt herself on July 13, 2003 while cleaning shelves at the request of her administrator. Dr. Loomis ordered a cervical spine MRI, which was done the next day, and showed disc protrusions at four levels from C2-3 through C5-6. The MRI findings were essentially the same as the 2002 MRI, except for more significant bone narrowing and impingement of the left C7 nerve root.
15. Dr. Loomis again recommended and then scheduled plaintiff for the anterior cervical diskectomy and fusion surgery at C5-C6 and C6-C7, which was done on July 30, 2003. *Page 6 
This surgery was the same surgery Dr. Loomis had recommended in October of 2002, before plaintiff's injury on July 15, 2003. However, prior to her injury of July 15, 2003, plaintiff had not experienced pain of a sufficient level to pursue this surgery.
16. On September 3, 2003, plaintiff asked Dr. Loomis to write her a return-to-work date that was "undetermined" because of her fear that she would never return to work. On that same date, Dr. Loomis suggested that plaintiff undergo a Functional Capacity Evaluation in three months if plaintiff continued to feel she was incapable of returning to gainful employment.
17. On November 26, 2003, plaintiff returned to see Dr. Loomis reporting "totally new symptoms." Plaintiff reported she was suffering from numbness in the back of her head when bending her neck forward, as well as choking sensations when bending her head forward. Plaintiff did not report any new injury. Dr. Loomis recommended an additional MRI scan and scheduled a Functional Capacity Evaluation examination for plaintiff, noting that he was unable to explain why plaintiff was doing so poorly and, further, could not explain any of her symptoms.
18. On February 24, 2004, plaintiff returned to Dr. Loomis with continuing complaints of weakness in her arms and numbness in the back of her head and in her hands. Once again, Dr. Loomis noted he was unable to explain plaintiff's symptoms. Dr. Loomis reiterated in his deposition testimony that he has been unable to determine the cause of these complaints.
19. Dr. Loomis has been plaintiff's surgeon for neck problems since January 6, 1992. He found plaintiff to be someone with a good work ethic, who has always tried to return to her previous work and tried to "tough it out." Dr. Loomis testified that in his opinion, plaintiff's July 15, 2003 accident accelerated, exacerbated, and aggravated her pre-existing neck condition. Dr. *Page 7 
Loomis testified that in his opinion that plaintiff has been completely unable to work from the date of her July 30, 2003 surgery through the present.
20. In July 2003, plaintiff was also seen by a partner at the office of Mars Hill Chiropractic, with complaints of worsening right shoulder and right arm pain. She reported that her pain had worsened after she cleaned off some shelves at work on July 15, 2003. Dr. Lawrence Smith of the practice had originally treated plaintiff for neck and shoulder pain on May 1, 1991. While Dr. Smith adjusted plaintiff periodically between 1991 and 2003, he never suggested that she miss any work and never placed specific job limitations on her during that time. After seeing her in July 2003, Dr. Smith's office sent her back to see Dr. Loomis.
21. Following her surgery by Dr. Loomis, plaintiff returned to see Dr. Smith on August 23, 2004. She complained of low back and mid back pain and pain into her right arm. Dr. Smith saw plaintiff nine times from August to November 2004, treating her with soft tissue manipulation and massage and interferential current and joint manipulation.
22. Dr. Smith testified that he believed that the July 15, 2003 incident aggravated and accelerated plaintiff's neck symptoms. He based his assessment upon both subjective and objective findings. In Dr. Smith's opinion, based upon her lack of consistent response to therapy, plaintiff will most likely continue to have some pain. Dr. Smith testified that he was not particularly optimistic that plaintiff would return to work in the future.
23. On May 26, 2004, plaintiff visited neurologist, Dr. Cecil Durham, who conducted an x-ray of her head and neck and noted that plaintiff had multiple spine problems. Additionally, he noted that the symptoms did not exist prior to July 30, 2003. After reviewing plaintiff's MRI scan, Dr. Durham found "absolutely no cause to explain anything like she is complaining of." *Page 8 
24. On March 30, 2005, Dr. Michael J. Goebel of the Blue Ridge Bone and Joint Clinic, PA examined plaintiff at the defendants' request for a second opinion. Plaintiff complained of headaches with head numbness, migraines, and right shoulder pain. Dr. Goebel found that plaintiff had less motion than normal, which is typical with a fusion. He found no neurological abnormalities. Dr. Goebel testified that he would generally release a patient to return to work four to six weeks post fusion surgery, with no restrictions. In his opinion, plaintiff was at maximum medical improvement and should be able to return to work.
25. Plaintiff clearly has a significant history of prior neck, shoulder, and back pain. She underwent a total of three (3) back surgeries prior to her July 15, 2003 injury. Despite these physical ailments, plaintiff continued to work for defendant. While the fifteen (15) pound lifting restriction imposed by Dr. Loomis after the October 3, 1996 surgery would likely have prevented plaintiff from returning to work as a certified nursing assistant (CNA), she did work for nearly seven (7) years for defendant in the capacity of a medical supply clerk. There is no evidence to show that plaintiff was unable to continue her work as a medical supply clerk until the July 15, 2003 injury by accident that aggravated her condition.
26. In weighing the medical evidence, the Full Commission gives more weight to the opinions of the treating professionals who have treated plaintiff for lengthy periods of time, from over 15 years with Dr. Smith, over 18 years with Dr. Loomis, and over 17 years with Dr. Barnhardt's office. The opinions of these doctors are given more weight than the opinion of Dr. Goebel, who only examined plaintiff on one occasion.
27. In assessing the evidence, the Full Commission finds plaintiff to be credible. As testified by both Dr. Loomis and Dr. Barnhardt, plaintiff tends to try to work through pain and *Page 9 
has a good work ethic. She has always returned to work after her prior surgeries and is not a person who is attempting to fabricate pain to excuse her from working.
28. Considering plaintiff's testimony, and the testimony of the treating physicians, on July 15, 2003, plaintiff sustained a specific traumatic incident while she was cleaning out the stock room shelves and attempting to dislodge the geri-chair tabletops. As a consequence, she aggravated her pre-existing cervical condition to the point that surgery was necessary to bring her pain relief.
29. Due to plaintiff's July 15, 2003 injury by accident, plaintiff has been unable to return to her prior employment, either as a CNA or as a medical supply clerk. Considering her age, education, work experience, and the limitations she has due to her pain, plaintiff has been unable to earn wages in any other employment since she underwent the surgery performed by Dr. Loomis on July 30, 2003.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 15, 2003, plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of her employment with defendant, when she injured her neck while cleaning out the stock room shelves. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's July 15, 2003 injury by accident aggravated plaintiff's pre-existing cervical condition such that it became more painful and surgery was reasonably necessary. Therefore, defendants are responsible for providing the necessary medical treatment, including *Page 10 
the surgery performed by Dr. Loomis. Click v Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E. 389 (1980).
3. Plaintiff has met her burden of showing that she is unable to earn the same wages she had earned before the injury, either in the same employment or in other employment. Hilliard v. Apex Cabinet,305 N.C. 593, 290 S.E.2d 682 (1982). Therefore, defendants are responsible for paying plaintiff ongoing total disability benefits beginning July 30, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. At the time of plaintiff's July 15, 2003 injury by accident, plaintiff's average weekly wage was $472, yielding a compensation rate of $314.68. N.C. Gen. Stat. § 97-2.
5. There is no evidence that plaintiff sustained a new intervening injury by accident or non-work related injury in November 2003 that would explain her new symptoms. N.C. Gen. Stat. § 97-2(6); Click v PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 389 (1980).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff for reasonably necessary medical treatment of her injury to her cervical area from the specific traumatic incident of July 15, 2003, including the 2003 surgery performed by Dr. Loomis.
2. Defendants shall pay plaintiff total disability compensation at the rate of $314.68 per week beginning July 30, 2003 and continuing until further Order of the Commission. All accrued amounts shall be paid in a lump sum.
 3. Defendants shall pay the costs. *Page 11 
This the 9th day of February, 2007.
 S/_________________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
 S/_________________________ LAURA K. MAVRETIC COMMISSIONER